WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Garvin Promotion Group LLC and 32X64 LLC,<br><br>            Plaintiffs,<br><br>v.<br><br>Jackson Jet Center LLC, et al.,<br><br>            Defendants. | No. CV-25-03824-PHX-SMB<br><br>**ORDER** |

Before the Court is Defendants United States Aviation Underwriters, Inc. ("USAU") and United States Aircraft Insurance Group's ("USAIG") (collectively, "USAIG") Motion to Dismiss (Doc. 14). The Court grants USAIG's Motion to Dismiss for the reasons below.

## I.     BACKGROUND

Plaintiffs' Second Amended Complaint ("SAC") alleges as follows. Plaintiff 32X64 LLC ("32X64) owns Global 5500, a business jet aircraft (the "Airplane"), and Plaintiff Garvin Promotion Group LLC ("GPG") is its operator. (Doc. 12 at 2.) 32X64 obtained an aircraft insurance policy from USAIG (the "32X64 Policy"). (*Id.* at 3.) Defendant Jackson Jet Center LLC ("JJC") also obtained an aircraft insurance policy from USAIG covering, among other things, JJC's operations (the "Jackson Policy"). (*Id.*)

On April 1, 2025, GPG entered into an Aircraft Hangar Storage Agreement with JJC (the "Hangar Lease"). (*Id.*) On August 17, 2025, JJC caused another aircraft it was towing to collide with Plaintiffs' Airplane, damaging the Airplane's left winglet. (*Id.*) This

damage rendered the Airplane unairworthy. (*Id.*) GPG discussed with JJC the need to cover the cost of alternative transportation ("Interim Lift") for at least three upcoming, previously scheduled, flights while the Airplane was unavailable. (*Id.*) JJC agreed and arranged and covered the costs of the three flights. (*Id.* at 4.)

During this time, Plaintiffs communicated with JJC and USAIG, submitting requested information to determine collision damage and repair of the winglet. (*Id.*) But USAIG's adjustor, Brand Hernke, emailed Plaintiffs: "Jackson Jet Center, nor USAIG, as Jackson Jet's insurer, are able to pay for the damages at this time. I suggest a hull claim be set up so this can be taken care of." (*Id.* at 5.) Nevertheless, Plaintiffs continued to communicate with Hernke, sending him the work estimate and invoice for the winglet repairs. (*Id.*) In these communications, Plaintiffs also stressed the need for USAIG to pay the claim because of the then-pending sale of the Airplane and need to fly and position the Airplane for the required pre-purchase inspection, and the scheduled delivery and closing to a buyer on September 15. (*Id.*) Plaintiffs then sought confirmation that USAIG, per an agreement, would have a coverage determination by September 2. (*Id.*)

At USAIG's request, Plaintiffs followed up days later with photos of the damaged winglet, updated invoices for the repairs, and a statement from the Bombardier repair facility that the winglet assembly was the prudent option. (*Id.*) On September 5, again at USAIG's request, Plaintiffs emailed an expanded statement from the Operations Supervisor at the Bombardier repair facility. To which Hernke replied, in part: "Considering your relationship with Jackson Jet Center, we are willing to pay you for the Winglet replacement. Considering the two Bombardier Estimate/Invoices, it appears this total is $665,324.54 (see attached). We will also retain the damaged Winglet." (*Id.*) Plaintiffs agreed to USAIG retaining the damaged winglet.

However, that same day, JJC sent GPG an email demanding reimbursement for the cost of the Interim Lift. (*Id.* at 4.) Five days later, USAIG emailed Plaintiffs through a new adjustor, John Watson, a proposed Release and Settlement Agreement. (*Id.* at 5–6.) Plaintiffs responded, proposing that the Agreement not waive and release any defenses or

counterclaims regarding JJC's reimbursement demand. (*Id.* at 6.) Watson rejected the proposal. (*Id.*) Thereafter, USAIG refused to pay the winglet repair claim unless Plaintiffs agreed to the Settlement and Release Agreement. (*Id.*)

Plaintiffs sued JJC and USAIG. Against JJC, Plaintiffs claim: negligence; breach of contract; and breach of the covenant of good faith and fair dealing. Additionally, they seek a declaration that JJC is solely liable for the costs and coverage of the Interim Lift. Against USAIG, Plaintiffs claim breach of the covenant of good faith and fair dealing.

JJC counterclaimed. It alleges that, under the Hangar Lease, it agreed to arrange for the Interim Lift with the understanding that GPC would reimburse it for the costs. (Doc. 8 at 9–10.) Thus, against GPC only, JJC claims: breach of contract, and breach of the covenant of good faith and fair dealing. (Doc. 8 at 10–12.)

USAIG now moves to dismiss Plaintiff's SAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. 14.)

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.    DISCUSSION

USAIG moves to dismiss Plaintiff's breach of the covenant of good faith and fair dealing claim, arguing it had no duty to Plaintiffs under the Jackson Policy. The Court agrees.

"Insurance bad faith denial-of-coverage claims arise when an insurer intentionally denies, fails to process, or fails to pay a claim without a reasonable basis for such action." *Satamian v. Great Divide Ins. Co.*, 545 P.3d 918, 928 (Ariz. 2024). "Such claims are derived from the covenant of good faith and fair dealing." *Wagner v. Ariz. Mun. Risk Retention Pool*, 585 P.3d 816, 822 (Ariz. Ct. App. 2026). In Arizona, "[t]he law implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). In other words, "the duty to act in good faith arises by virtue of a *contractual* relationship." *Leal v. Allstate Ins. Co.*, 17 P.3d 95, 99 (Ariz. Ct. App. 2000)

- 4 -

(emphasis in original) (citation modified) (quoting *Rawlings*, 762 P.2d at 569). "Thus, it is well established that a third-party claimant, a stranger to the contract, cannot sue the insurer for tortious breach of the duty of good faith." *Leal*, 17 P.3d at 99; *see also Wagner*, 585 P.3d at 822 (explaining that "a contractual nexus is a necessary element to any bad faith claim" brought against an insurer pursuant to the implied covenant of good faith and fair dealing). Accordingly, to bring a claim for breach of the implied covenant of good faith—in contract or tort—a plaintiff must first "establish that he is a first party to a contract." *Mathis v. Allstate Ins. Co.*, No. 2 CA-CV 2018-0048, 2018 WL 4293235, at *3 (Ariz. Ct. App. Sept. 7, 2018).

Plaintiff's SAC states that the "32X64 Policy between Plaintiff and the USAIG Defendants contains an implied covenant of good faith and fair dealing." (Doc. 12 at 10.) But Plaintiffs did not bring a claim under this policy. Their SAC asserts: "Defendants have unreasonably refused to pay the amounts due to Plaintiffs under the Jackson Policy, and have unreasonably delayed the same." (*Id.*) Because of this refusal, Plaintiffs claim that "Defendants have breached the implied covenant by the intentional failure to pay the full amount of the Claim." (*Id.*)

It is undisputed that Plaintiffs are not a party to the Jackson Policy contract. Thus, they are suing USAIG as third-party claimants to the Jackson Policy. In this posture, USAIG does not owe a duty of good faith and fair dealing to Plaintiffs because they are not a party to this contract. *See Leal*, 17 P.3d at 9; *see Burkons v. Ticor Title Ins. Co. of Cal.*, 813 P.2d 710, 720 (Ariz. 1991) ("[T]he covenant forbids *a party to a contract* from doing anything denying the right of the other to receive the benefits that flow from the contract." (emphasis added)). Plaintiffs' SAC admits that USAIG denied the claim as JJC's insurer, and directed them to file a direct claim under the 32X64 Policy. In an August 25 email, USAIG said: "Jackson Jet Center, nor USAIG, as Jackson Jet's insurer, are able to pay for the damages at this time. I suggest a hull claim be set up so this can be taken care of." (Doc. 12 at 5.)

Plaintiffs' argument to the contrary is unpersuasive. They argue that Defendants

cite the *Leal* case in "an attempt to insert a requirement, not established by any Arizona case law authority, that the duty of good faith and fair dealing to an otherwise insured claimant arises only if the claim was made or ultimately adjusted under such claimant's policy." (Doc. 25 at 5.)  The Court's above analysis demonstrates otherwise.  At bottom, a plaintiff may only maintain a claim for breach of the implied covenant where they are a first party to a contract.

Plaintiffs' separate contract with USAIG cannot save their claim.  USAIG's legal duty of good faith to Plaintiffs is contract specific.  "[S]uch liability is clear because it flows from the contractual relationship between the [Defendant] as insurer and [Plaintiffs] as insured." *See Wagner*, 585 P.3d at 823.  The duty of good faith and fair dealing is not fungible.

Accordingly, USAIG did not owe Plaintiffs a duty of good faith and fair dealing as third-party claimants to the Jackson Policy.  Therefore, the Court dismisses Plaintiff's breach of the covenant of good faith and fair dealing claim against USAIG without leave to amend.  Plaintiffs have not brought a claim under their own policy with USAIG. Therefore, further amendment would be futile.

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting** Defendants United States Aviation Underwriters, Inc.'s and United States Aircraft Insurance Group's Motion to Dismiss (Doc. 14), thereby dismissing these two defendants from the case with prejudice.

Dated this 17th day of June, 2026.

_____
Honorable Susan M. Brnovich
United States District Judge